IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JUNG CHAN LEE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| | : | 1:15-CV-0143-LMM |
| v. | : | |
| | : | |
| MEGAMART, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>ORDER</u>

This case comes before the Court on Defendant's Motion for Summary Judgment [49]. After due consideration, the Court enters the following Order:

## I.    BACKGROUND[1]

Defendant MegaMart hired Plaintiff Jung Chan Lee as its IT Manager on or about January 16, 2013. Dkt. No. [58-1] ¶ 4. Defendant is a grocery market operating out of Duluth, Georgia. <u>Id.</u> ¶ 1. In March of 2014, Plaintiff also assumed the Housewares Manager position in addition to retaining his IT Manager duties. <u>Id.</u> ¶ 6.

While working for Defendant, Plaintiff received a bi-weekly salary of $1,750.00, or $45,000 per year no matter how many or how few hours he worked

---

[1] All facts are construed in a light most favorable to Plaintiff as the non-moving party.

each week. Id. ¶¶ 8-9. When he was absent from work, he was not docked any pay. Id. ¶ 10.

Except for periods of vacation, holiday, or sickness, Plaintiff generally worked from 9:00 am until 6:00 pm six days a week, with an hour for lunch, averaging about 48 hours per week. Id. ¶ 12. He was not required to report when he arrived at work or when he left. Id. ¶ 13. Plaintiff understood that his $45,000 salary covered the 48 hours he worked each week without any additional compensation for hours worked overtime. Dkt. No. [61-1] ¶¶ 11, 13.

Because Plaintiff was a salaried employee, Defendant provided him with paid vacation and health insurance worth $300 per month. Dkt. No. [58-1] ¶ 14. Additionally, his salary exceeded that of the hourly employees in the IT and Housewares Departments. Id. ¶ 18. For instance, one employee in the IT Department, Ms. Gi Han Yun, makes $10.25 per hour, while Seung Ok Kim and Chan Soon Park in the Housewares Department make $11.00 an hour and $8.75 an hour, respectively. Id. ¶ 19.

While working as the IT Manager, it is undisputed that Plaintiff's duties at least included performing maintenance on all existing computer systems, id. ¶ 25, and troubleshooting problems that arose in Defendant's inventory database, known as the SMS/POS database.[2] Id. ¶ 20. Such troubleshooting included fixing

---

[2] It is disputed if one of his additional duties included actually managing the databases and managing the other IT employee. Dkt. No. [61-1] ¶ 14. It is also disputed as to whether troubleshooting and fixing computers was his primary duty or simply one part of an array of duties. Id. ¶ 15.

2

or correcting prices or inventory numbers in the system. <u>Id.</u> ¶ 20. If Plaintiff could not solve an issue, he would recommend to his superiors that help from a third party vendor, POS Unlimited, was needed.[3] <u>Id.</u> ¶ 21; Dkt. No. [61-1] ¶ 22.

Additionally, Plaintiff trained new users on how to work the database. Dkt. No. [58-1] ¶ 22.  To assist Plaintiff in his IT responsibilities, Ms. Yun, discussed above, would report any irregularities to Plaintiff. <u>Id.</u> ¶ 24.

As part of his database duties, Plaintiff would consult with outside vendors regarding the purchase and technical characteristics of new databases and upgrades for the SMS/POS system that were fundamental to MegaMart's business.[4] <u>Id.</u> ¶ 26. For example, on or about March 4, 2013, Plaintiff contacted a representative of Celerant Technology Corporation and inquired with technical questions about a new Retail Management System and POS System. <u>Id.</u> ¶ 27.

Plaintiff was the only employee who could make changes to the inventory data in the database if a problem arose. <u>Id.</u> ¶ 28. Furthermore, Defendant kept the server in which the database was stored in a locked room. <u>Id.</u> ¶ 29. Plaintiff

---

[3] The parties dispute the extent to which Plaintiff knew how to fix or correct technical issues. Plaintiff contends that he knew only how to fix very basic problems while Defendant contends that Plaintiff knew how to fix more complex issues and only hired outside vendors if necessary. Dkt. No. [61-1] ¶ 20.

[4] Plaintiff admits this fact in part and denies this fact in part. Plaintiff admits that he would consult with outside vendors regarding the database but denies any implication that he would personally recommend database upgrades to his superiors. However, this fact does not imply one way or the other that Plaintiff made any recommendations. It merely states that Plaintiff consulted with the vendors, a fact Plaintiff plainly admits.

possessed his own key and other managers could access an emergency key. Id.; Dkt. No. [61-1] ¶ 39.

Additionally, Plaintiff was required to participate in a weekly conference call with MegaMart, Ltd. executives in Korea as the sole representative from MegaMart, Inc. in the U.S. Dkt. No. [58-1] ¶ 30. The purpose of the calls was to implement the automatic purchase order system from MegaMart, Ltd.'s Korean grocery stores in the U.S. location.[5] Id. The system is intended to automatically order products when a certain number of products have been sold. Id. ¶ 31. Plaintiff was the only MegaMart employee who understood how to implement the automatic purchase order system.[6] Id. ¶ 32. Plaintiff was responsible for strengthening MegaMart's IT by creating and implementing coding that made MegaMart's systems more effective. Id. ¶ 33.

When Plaintiff requested permission from MegaMart executives to have certain systems repaired, his requests were rarely denied. Id. ¶ 35. Additionally, Plaintiff was responsible for training people within the IT Department. Id. ¶ 38. For instance, Plaintiff trained Ms. Yun to work as his subordinate in the IT

---

[5] Plaintiff admits this fact but qualifies his admission by stating that he did not make any decisions in the conference calls. However, the fact does not suggest that he made any decisions. It merely states that he participated in conference calls regarding IT projects as the only representative for MegaMart, Ltd.'s U.S. location.

[6] While Plaintiff denies that he was the only employee who understood how to implement the system, Plaintiff fails to identify any other employee who did know how. Instead, Plaintiff simply states that an outside vendor, Nongshim Data Systems, knew how to implement the system. However, Nongshim, as an outside vendor, is not the same as an employee, nor does Plaintiff argue that it is. As such, the statement is technically accurate as stated.

department.[7] Id. ¶ 39. If IT Department supplies ran low, Plaintiff was required to restock. Dkt. No. [61-1] ¶ 25.

Plaintiff assumed the position of Housewares Manager in addition to retaining all of his IT duties in March of 2014. Dkt. No. [58-1] ¶ 40. His salary did not increase when Defendant gave him this new assignment. Dkt. No. [61-1] ¶ 41. Furthermore, his most important duties remained in the IT Department because he was the only employee who could address IT emergencies. Id. ¶ 42.

 As Housewares Manager, Plaintiff observed whether the Housewares employees were doing a good job. Dkt. No. [58-1] ¶ 43. If the employees made any errors, Plaintiff would have been responsible for their performance. Id.  ¶ 44. However, it is undisputed that Plaintiff was not responsible for providing performance appraisals for his subordinates. Dkt. No. [61-1] ¶ 59.

In addition to supervising Housewares employees, Plaintiff was responsible for deciding which merchandise to order, including new items, and setting prices.[8] Dkt. No. [61-1] ¶ 44. While there is some dispute as to who actually compiled the list of merchandise to order, it is undisputed that if another

---

[7] Plaintiff denies in part and admits in part this fact as proffered by Defendant. Specifically, Plaintiff objected to Defendant's contention that Ms. Yun worked under Plaintiff full-time. Instead, Plaintiff claims that Ms. Yun retained her position in the Receiving Department while working in the IT Department. Importantly, Plaintiff does not specifically deny that Ms. Yun was Plaintiff's subordinate. Id. ("However, Plaintiff DENIES Ms. Yun worked full-time under him; she also continued her duties in the Receiving department."). As such, the Court will consider that fact, as stated above, admitted.

[8] It is disputed as to whether Plaintiff also decided which items went on sale, how items were displayed, and which items would be removed.

employee made the list, he or she was required to get Plaintiff's approval. Id. ¶ 45. With regards to setting prices for new merchandise, Plaintiff's superiors gave him discretion to set prices between 30-40% above cost. Id. ¶ 47.

Plaintiff voluntarily resigned from MegaMart on July 23, 2014. Dkt. No. [58-1] ¶ 7. He filed this suit against Defendant on January 15, 2015. Dkt. No. [1]. In his Complaint, Plaintiff claims he is entitled to overtime compensation under the Federal Labor Standards Act ("FLSA"), 29 U.S. § 207, for weeks he worked over 40 hours. Id. Defendant, in turn, has submitted a Motion for Summary Judgment asking this Court to dismiss Plaintiff's Complaint. Dkt. No. [49]. However, if the Court does not dismiss Plaintiff's claims, Defendant asks that the Court dismiss liquidated damages and limit overtime compensation to "half-time" rather than "time and a half."

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

6

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.   DISCUSSION

As discussed above, Defendant asks for full summary judgment on Plaintiff's claims because he was allegedly exempt from overtime compensation.

However, if the Court does not grant full summary judgment, Defendant asks that the Court dismiss liquidated damages and limit Plaintiff's overtime compensation to "half-time" rather than "time and a half." The Court will first discuss whether Plaintiff was exempt under the FLSA.

## A. Exemptions

Plaintiff contends that Defendant did not pay him overtime compensation as required by the FLSA. Defendant, on the other hand, argues that Plaintiff is not entitled to overtime compensation because he squarely fits within the FLSA's definition of an "exempt administrative employee."[9] Defendant must prove Plaintiff fell within the exemption by clear and affirmative evidence.[10] Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 805 (11th Cir. 1992).

Section 213 of the FLSA exempts an employee from the minimum wage and overtime compensation requirements if he or she is "employed in a bona fide

---

[9] Defendant also argues that Plaintiff is an exempt executive employee. However, the Court will discuss that more thoroughly *infra*.

[10] Plaintiff contends it is Defendant's duty to prove Plaintiff fell within the exemption by clear and convincing evidence. However, as Defendant argues, the standard is actually clear and affirmative evidence. Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 805 (11th Cir. 1992) ("The defendant must prove applicability of an exemption by 'clear and affirmative evidence.'") (citing Donovan v. United Video, Inc., 725 F.2d 577, 581 (10th Cir. 1984)). "[C]lear and affirmative evidence is simply an invocation of the familiar principle of statutory interpretation that exemptions from a statute that creates remedies . . . should be construed narrowly and also that the burden of proof is on the employer." Linscheid v. Natus Med. Inc., No. 3:12-CV-67-TCB, 2015 WL 1470122, at *3 n.4 (N.D. Ga. Dec. 4, 2014) (quoting Fowler v. Incor, 279 F. App'x 590, 592 (10th Cir. 2008)) (internal quotations omitted). As such, the Court will not hold Defendant to the higher clear and convincing standard.

executive, administrative, or professional capacity." 29 U.S. § 213 (a)(1). The Code of Federal Regulations states that an employee is "employed in a bona fide administrative capacity" if he or she is "(1) Compensated on a salary or fee basis at a rate of not less than $455 per week;" "(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and "(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

The parties do not dispute that Plaintiff was compensated at a rate not less than $455 per week. However, the parties do dispute whether Plaintiff's primary duties as IT Mananger and Housewares Manager directly related to MegaMart's management or general business operations and whether his job involved discretion and independent judgment. However, because the Court finds that there remain questions of fact regarding the nature of Plaintiff's primary duties under the second prong of the administrative exemption, the Court need not consider the third prong as the exemption requires all three prongs be satisfied. As such the Court will only analyze the "primary duties" prong.

The Code of Federal Regulations states that, "[t]o qualify for the administrative exemption, an employee's *primary duty* must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a) (emphasis added). "To meet this requirement, an employee must perform work directly related to

assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. Some examples of administrative work include, but are not limited to: tax, finance, accounting, budgeting, auditing, insurance, quality control, purchasing, procurement, advertizing, marketing, research, safety and health, personnel management, human resources, employee benefits, labor relations, public relations, government relations, computer network, internet and database administration, legal and regulatory compliance, and similar activities. 29 C.F.R. § 541.201(b).

Once an employer shows that the employee performed exempt administrative work, it must then demonstrate that the administrative work was the employee's primary duty. 29 C.F.R. § 541.700(a) ("To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work."). The Regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." Id.

In determining whether an employee's primary duty relates to exempt work, courts must look at "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. Factors to consider include, but are not limited to:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Id.

The Regulations assert that the amount of time spent on exempt work is a useful guide "in determining whether exempt work is the primary duty of the employee." 29 § 541.700(b). It further asserts that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id. However, the Regulations acknowledge that time, alone, is not a perfect test. Id. As such, the Regulations allow that an employee who spends less than 50 percent of his or her time performing exempt work "may nonetheless meet the primary duty requirement if the other factors support such a conclusion." Id.

As stated above, Plaintiff held two positions while working at MegaMart. The Court will first analyze the positions separately to determine whether his primary duties under each consisted of exempt work.

### i. IT Manager

With regards to Plaintiff acting as IT Manager, Defendant contends that he fell within the administrative exemption because his primary duties fit the "computer network, internet and database administration" category of the Regulations. See 29 C.F.R. § 541.201(b) ("Work directly related to management or general business operations includes . . . computer network, internet and database administration."). Plaintiff, on the other hand, contends that his duties did not fit within that category.

11

Before discussing Plaintiff's alleged duties, it is helpful to understand the relatively new and sparse case law surrounding IT workers and the FLSA exemptions. In <u>Heffelfinger v. Electronic Data Systems, Corp.</u>, 580 F. Supp. 2d 933 (C.D. Cal. 2008) <u>rev'd in part on other grounds</u>, 492 F. App'x 710 (9th Cir. 2012), the court recognized that a dichotomy exists between certain types of IT workers.[11] <u>Heffelfinger</u>, 580 F. Supp. 2d at 953. Specifically, the court found that, out of five cases, two classified the IT employees as exempt while the other three did not. <u>Id.</u> In the two exempt cases, the courts found that the employees were "charged with writing code, programming, or 'administering' databases or networks" while the three non-exempt employees were tasked with installing, maintaining, and troubleshooting software. <u>Id.</u>

In <u>Heffelfinger</u> itself, the court found that the class employees were exempt as their duties included "computer programming of business applications, . . . conceptualizing, designing, constructing, testing and implementing portions of business and information technology solutions." <u>Id.</u> The dichotomy appears to exist between those IT employees who work with the IT products in a more in-depth manner as opposed to those employees who merely fix problems with the systems as they crop up.[12]

---

[11] Importantly, <u>Heffelfinger</u> dealt with the California overtime statutes. However, its administrative exemption "has been construed in the same manner as the administrative exemption under the [FLSA]." <u>Id.</u> at 949 (citing <u>Combs v. Skyriver Comms., Inc.</u>, 72 Cal. Rptr. 3d 171 (Ca. Ct. App. 2008)).

[12] Since <u>Heffelfinger</u> was decided, other district courts have recognized this dichotomy between IT workers. <u>See</u> <u>Chicca v. St. Luke's Episcopal Health Sys.</u>,

Additionally, the Department of Labor ("DOL") has issued an Opinion

Letter further supporting this dichotomy. Dkt. No. [58-5]. It states that the main

duties of an IT support specialist include:

> 55%—Analyzes, troubleshoots, and resolves complex problems with
> business applications, networking, and hardware. Accurately documents all
> work in appropriate problem tracking software. Prioritizes tasks based on
> service level agreement criteria with limited supervision.
> 20%—Installs, configures, and tests upgraded and new business computers
> and applications based upon user-defined requirements. Assists users in
> identifying hardware/software needs and provides advice regarding
> current options, policies, and procedures. Creates and troubleshoots
> network accounts and other business application user accounts as
> documented in the employee lifecycle process.
> 10%—Participates in the design, testing, and deployment of client
> configurations throughout the organization. This process requires detailed
> knowledge of Microsoft operating systems and compatible business
> applications. Leverages application packaging software technology for
> deployment of business applications to client systems.
> 5%—Documents technical processes and troubleshooting guidelines.
> Documents end-user frequently asked questions about computer systems
> or programs and publishes on Intranet as guidelines for the entire
> organization.
> 5%—Monitors automated alerts generated by systems management tools
> and makes decisions on the most effective resolution.

Id. at 2-3. After analyzing these duties, the DOL concluded that the

administrative exemption does not apply to IT support specialists. Id. at 5.

However, the DOL analyzed those IT workers who *do* qualify for the

administrative exemption. Id. Those workers include computer systems analysts,

computer programmers, software engineers, or other similarly skilled workers.

Id. (citing 29 C.F.R. § 541.400(a)). However "such job titles alone . . . are not the

---

858 F. Supp. 2d 777, 788 (S.D. Tex. 2012); Smith v. Bank of N.Y. Mellon Corp.,
No. 10-678, 2011 WL 836858, at *15 (W.D. Penn. Jan. 20, 2011).

determining factor for exemption." Id. Instead, the primary duties of exempt IT workers must include: (1) "[t]he application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifics;" (2) "[t]he design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;" (3) "[t]he design, documentation, testing, creation or modification of computer programs related to machine operating systems;" or (4) "[a] combination of the aforementioned duties, the performance of which requires the same level of skills." 29 C.F.R. § 541.400(b).

The Court agrees with both the Heffelfinger court and the DOL Opinion Letter that a dichotomy exists between IT workers such that those who primarily troubleshoot and repair computer systems are not exempt while those who have a more in-depth role in creating and managing computer systems are exempt. See Heffelfinger, 580 F. Supp. 2d at 953; Dkt. No. [58-5]. As such, the Court must determine within which category Plaintiff's primary duties fall.

Defendant contends that Plaintiff's primary duties fall within the exempt IT worker category because they "far exceed merely installing and troubleshooting computer systems." Dkt. No. [49-1] at 12. Defendant claims Plaintiff's duties included: (1) implementing and managing the databases and the server which included internal network installation and course management; (2) identifying and remediating problems with MegaMart's databases and server; (3)

consulting, recommending, and hiring outside vendors regarding the necessity of purchasing and/or upgrading new databases and SMS/POS systems; (4) training other employees on how to work the SMS/POS system; (5) regularly analyzing inventory to determine causes of loss and improve the effectiveness of the Receiving Department; (6) performing system maintenance; (7) creating new code to increase the system's efficiency; and (8) participating in a weekly conference call with MegaMart, Ltd. as the sole MegaMart, Inc. representative. Lastly, Defendant contends that Plaintiff successfully requested that another MegaMart employee, Ms. Yun, be transferred to his department and work as his subordinate.[13]

Plaintiff disputes that he ever performed most of the duties included in Defendant's list. Specifically, Plaintiff denies he was responsible for implementing and managing the SMS/POS system beyond such limited monitoring and troubleshooting. Dkt. No. [58-1] ¶ 20. Plaintiff denies that he would, on his own accord, hire outside vendors to implement new databases and upgrades. Id. ¶ 26. Instead, Plaintiff contends he was required, by his superiors, to contact the outside vendors if a complex issue arose to get step-by-step assistance. Id. Additionally, Plaintiff contends that he never made any independent recommendations regarding new system purchases or upgrades to

---

[13] Plaintiff contends that Defendant's list of duties is too vague to allow summary judgment. While it is true that the primary duty inquiry is fact intensive, the Court finds that Defendant's list is sufficiently detailed as it discusses the specific day-to-day tasks Plaintiff performed. As such, the Court will not deny summary judgment based on that argument alone.

his superiors. Id. Instead, Plaintiff argues that he merely relayed that information to those who had the authority to make decisions. Id.

While Plaintiff admits to identifying and remediating issues with MegaMart's server and database, Plaintiff denies that his role was anything more than basic troubleshooting. Id. ¶ 21. Additionally, Plaintiff admits that he participated in weekly meetings, but, like his contact with the outside vendors, Plaintiff contends that he never made any decisions during those calls. Id. ¶ 30.

Plaintiff argues that, rather than Defendant's list of duties, his actual duties primarily consisted of "repairing equipment and troubleshooting software in order to keep MegaMart's computer systems running smoothly." Dkt. No. [58] at 6. Plaintiff unequivocally stated in his deposition testimony that he had no other primary duties than to repair and troubleshoot. Dkt. No. [58-3] at 14. According to Plaintiff, Defendant's corporate representative agreed that Plaintiff's "most important" duty was making sure the computer system ran smoothly.[14] Dkt. No. [58-4] at 28. While that may include managing and implementing upgrades at his own discretion, there is at least a question of fact that Plaintiff's primary duty was simply troubleshooting issues as they arose.

For those reasons, the Court agrees with Plaintiff that questions of fact remain as to Plaintiff's primary duties. Much of Defendant's evidence came from

[14] Though Defendant has submitted affidavit evidence that goes beyond what the corporate representative said in his deposition, it is undisputed that he said Plaintiff's "most important" duty was to ensure the computer system ran smoothly. Dkt. No. [58-4] at 28.

16

a resume Plaintiff created for another job—evidence flatly contradicted by Plaintiff's sworn deposition testimony.[15] Courts have found that resume evidence "may not provide the most accurate picture of an employee's job because resumes are typically designed to enhance the employee's duties and responsibilities in order to obtain a job." Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 401 (6th Cir. 2004). While the Court does consider the resume evidence in its analysis, it does not wholly negate Plaintiff's contradicting deposition testimony in the way Defendant suggests. Instead, it continues to add to the questions of fact to be decided by a jury.

Additionally, the Court finds that even the facts to which Plaintiff has admitted do not unequivocally show that he primarily engaged in exempt work. For instance, Defendant claims that Plaintiff would independently hire and consult outside vendors regarding the purchase of new databases and upgrades for the SMS/POS system or when complex issues arose. However, Defendant provides one anecdotal instance where this actually occurred and Plaintiff's deposition testimony, cited in Defendant's brief as support, does not show that Plaintiff hired anyone. See Dkt. No. [49-6] at 22. Instead, it merely shows that

---

[15] Defendant urges the Court to discount Plaintiff's sworn testimony because Plaintiff perjured himself in his first deposition testimony. However, the Court has already sanctioned Plaintiff by requiring a jury instruction be given before Plaintiff testifies at any future trial. The Court will not further sanction Plaintiff by ignoring his second deposition testimony. It will be up to the jury to determine if they find Plaintiff's second sworn testimony and the testimony at any future trial credible.

Plaintiff called outside vendors for assistance. Id. ("Q. Were you the one to call . . . POS when you needed their services? A. Yes.").

Defendant's other supporting evidence, consisting of deposition testimony from other MegaMart employees, is similarly contradicted by Plaintiff's deposition. Specifically, Plaintiff states that he merely relayed recommendations between the outside vendors and his superiors. Dkt. No. [58-3] at 5 ("POS had recommended that we needed that. So when I heard that, I relayed that to Mr. Cho, and after a while, Mr. Cho asked me to get a quote for it."). Relatedly, Plaintiff states that, while he participated in the weekly calls with MegaMart, Ltd., he acted merely as a conduit, passing information between MegaMart, Ltd. and his superiors at MegaMart, Inc. Even if these weekly calls did constitute exempt work, they cannot, on their own, constitute Plaintiff's primary duty as they occurred once a week.

It is clear that the parties fervently contest whether Plaintiff's primary duties as IT Manager consisted of repairs and troubleshooting (non-exempt work) or "writing code, programming, or 'administering' databases or networks" (exempt work). See Heffelfinger, 580 F. Supp. 2d at 953. Because there are numerous questions of fact about what Plaintiff actually did on a day-to-day basis, the Court is unwilling to dismiss his claims as they relate to that position.

### ii. Housewares Manager

Defendant contends that Plaintiff's primary duties while working as MegaMart's Housewares Manager similarly exempt him from overtime

18

compensation under both the administrative exemption and the executive exemption. As stated above, to meet the administrative exemption, an employee must perform work "directly related to the management or general business operations of the employer." 29 C.F.R. § 541.201(a).

As to the executive exemption, there are four elements. 29 C.F.R. § 541.100(a). First, the employee must receive a salary of at least $455 per week—something that is undisputed in this case. 29 C.F.R. § 541.100(a)(1). Second, the employee's primary duties must be "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2). Third, the employee must "customarily and regularly direct[] work of two or more other employees." 29 C.F.R. § 541.100(a)(3). And lastly, the employee must have "the authority to hire or fire other employees" or the employee's "suggestions and recommendations as to the hiring, firing and advancement, promotion or any other change of status of other employees [must be] given particular weight." 29 C.F.R. § 541.100(a)(4).

Defendant claims that Plaintiff's primary duties as Housewares Manager included: (1) ordering inventory; (2) setting prices; (3) deciding what items would go on sale; (4) discarding residual inventory; and (5) supervising two subordinates. According to Defendant, these duties place Plaintiff within both the administrative and executive exemption.

Defendant's argument appears to rely on the idea that Plaintiff's IT duties constituted exempt work, and that his Housewares duties merely added to that

exempt work. For instance, Defendant says, "when Lee began working as Housewares Manager in March 2014, his administrative job duties *expanded*." Dkt. No. [49-1] at 13 (emphasis added). In other words, Defendant does not argue that Plaintiff's Housewares duties, alone, were his primary duties. In fact, it is undisputed that, even after Plaintiff became Housewares Manager, his IT duties continued to be his primary duties. Dkt. No. [58-4] at 12-13 ("Q. Okay. After he was assigned housewares duties, what would you say was Mr. Lee's primary duty? A. IT.").

Defendant's argument must fail because the Court has already found that there is a question of fact as to whether Plaintiff's IT duties constitute exempt work. Because it is undisputed that the IT duties were his primary duties, even if the Housewares duties constituted exempt work, it would still fail the second prong of both exemption analyses. For that reason, Defendant's Motion for Summary Judgment is **DENIED**.

### B. Damages

Defendant contends that, even if Plaintiff is entitled to overtime compensation, he should not receive liquidated damages or time and a half for the weeks he worked over forty hours.

#### i. Liquidated Damages

The FLSA allows an employee to receive liquidated damages equal to the amount of overtime compensation or minimum wage compensation he or she is entitled to. 29 U.S.C. § 216(b). The liquidated damages are intended as a penalty

against the employer who failed to follow the FLSA. Id. (labeled as penalty). However, if the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages." 29 U.S.C. § 260. Defendant argues that Plaintiff is not entitled to liquidated damages because MegaMart's alleged violation of the FLSA was done in good faith.

The good faith defense has subjective and objective components. Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1566 (11th Cir. 1991) (quoting Bratt v. Cty. of Los Angeles, 912 F.2d 1066, 1071-72 (9th Cir. 1990)). To satisfy the subjective component, the employer must show it had "an honest intention to ascertain what [the Act] requires and to act in accordance with it." Id. at 1566 (quoting Brock v. Shirk, 833 F.2d 1326, 1330 (9th Cir. 1987)). For the objective component, the employer must show that it had reasonable grounds for believing that its conduct comported with the FLSA. Id. (quoting 29 C.F.R. § 790.22(c)).

Defendant argues that its alleged omission was in good faith because it paid Plaintiff a generous salary far exceeding that of the hourly wages received by non-exempt employees and benefits that were not provided to non-exempt employees. Additionally, Defendant points to the fact that Plaintiff never asked for overtime while working at MegaMart.

As support, Defendant cites two cases[16] in which the courts denied liquidated damages. In each case, the court relied on specific evidence demonstrating the defendant's good faith. For instance, in <u>Bennett v. SLT/TAG Inc.</u>, No. CIV. CV02-65-HU, 2003 WL 23531402, at *9-10 (D. Or. May 8, 2003), the defendants demonstrated that they "regularly consulted payroll brochures and that '[they] also periodically attend[ed] professional seminars regarding employment matters and receiv[ed] updates regarding wage and hour issues." <u>Id.</u> at *9.

In <u>Zachary v. Rescare Okla., Inc.</u>, 471 F. Supp. 2d 1183, 1193 (N.D. Okla. 2006), the defendants showed that they relied on a relevant DOL Opinion letter and that they made an internal analysis of relevant Supreme Court case law. <u>Id.</u> Based on that evidence, the court concluded that the defendants showed "an honest intention to ascertain and follow the dictates of the [FLSA]." Additionally, the court noted that, as to the objective standard, the FLSA "is an extremely fact-

---

[16] Defendant actually cites four cases in support; however, the last two cases fail to provide guidance. Specifically, in both <u>Santos v. CCT Corp.</u>, No. 08-CV-23563, 2009 WL 2602726, at *1 (S.D. Fla. Aug. 21, 2009), and <u>Andre v. Gonzalez</u>, No. 10-20536-CV, 2011 WL 1930423, at *2 (S.D. Fla. May 19, 2011), the courts found that the defendants acted in good faith. However, in coming to that conclusion, the courts did not provide the specific reasons as to why the defendants acted in good faith. Instead, the courts simply state that the evidence adduced at trial demonstrates good faith. While these cases undoubtedly show that a court can deny liquidated damages based on the defendant's proffered evidence, these two cases do not provide much guidance as to what evidence shows good faith. As such, the Court will consider them only for the limited notion that defendants can avoid liquidated damages if they proffer sufficient evidence.

intensive area of the law and that Defendants did not act unreasonably in concluding that differences [in the law] . . . justified the failure to pay." Id.

Here, Defendant has not provided any evidence of good faith beyond the fact that it paid Plaintiff a larger-than-average salary and benefits and that it felt Plaintiff was exempt based on its own conclusions. There is no evidence that it looked into the relevant law to determine its obligations under the FLSA, and, in fact, Defendant admits that it did nothing to ascertain whether Plaintiff's duties rendered him exempt. Dkt. No. [55] at 27 ("What did MegaMart do to determine whether or not Mr. Lee was exempt from the overtime payment requirements of the law? A. As far as my recollection, I don't think there was anything done.").

Additionally, Plaintiff points to the fact that Defendant was sued by another employee for overtime compensation just days before Plaintiff began working at MegaMart. Lee v. MegaMart, Inc., No. 1:13-CV-003250-RLV (N.D. Ga. filed Jan. 30, 2013). Like Plaintiff in this case, the plaintiff in that case sought to challenge his exempt status under the FLSA. Plaintiff contends that, whether this suit was valid, it should have at least prompted Defendant to look into the relevant law to determine if its other employees were improperly categorized. However, as discussed above, Defendant admits that it did nothing to investigate its compliance.

Based on these facts, Defendant has not met its burden to demonstrate good faith. Its Motion for Summary Judgment as to liquidated damages is **DENIED**.

### ii. Overtime Compensation

While the FLSA requires non-exempt employees to receive time and one half over their "regular rate of pay" as overtime compensation, the statute does not define a regular rate of pay. See U.S.C. § 207(a)(1); Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1310 (11th Cir. 2013). The parties dispute how the Court should calculate Plaintiff's regular rate of pay.

In Lamonica, the Eleventh Circuit described a general rule for calculating the regular rate of pay for employees like Plaintiff who are employed on a weekly salary basis. Lamonica, 711 F.3d at 1312. In those circumstances, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." Id. (quoting 29 C.F.R. § 778.113(a)). "Consequently 'where the employee is paid solely on a weekly salary basis, the number of hours the employee's pay is intended to compensate—not necessarily the number of hours he actually worked—is the divisor.'" Id. (quoting Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268 n.5 (11th Cir. 2008)).

Under that scenario, if a jury finds that a plaintiff's salary was intended to compensate for 50 hours a week but the plaintiff actually worked 55 hours a week, the jury would still calculate the regular rate of pay by dividing the employee's salary by 50 hours. The overtime compensation for the 10 hours over 40 per week would be calculated at one half the regular rate because the employee was already partially compensated for those hours. However, the

remaining five hours, that were not intended to be compensated, would be calculated at time and one half as the employee did not receive any compensation.

If a jury finds that the weekly salary was intended to compensate only a set number of hours a week, then this broad method applies. See id. However, a jury may find that the weekly salary was intended to cover *all* hours worked, no matter how few or how many the employee actually worked. Id. at 1310-11 (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 (1942)). This method, subsumed within the broader method, is known as the "fluctuating workweek method." Id. at 1311.

The fluctuating workweek method dictates that, "in the case of an employee who is paid a constant weekly salary for fluctuating hours," courts should calculate the regular rate of pay "by dividing that weekly salary by the number of hours actually worked." Id. at 1310-11 (citing Missel, 316 U.S. at 580). When courts use this method to calculate the employee's regular rate of pay, overtime hours are compensated at one-half such rate rather than one and a half such rate because the overtime hours "have already been compensated at the straight time regular rate, under the salary arrangement." Id. at 1311. So, under the earlier hypothetical, the employee working 55 hours a week under the fluctuating method would receive one half the regular rate for the 15 hours of overtime, as opposed to 10 hours at one half the regular rate and five hours at time and a half.

Defendant argues that there is no dispute that Plaintiff's salary was intended to compensate for all hours actually worked. Thus, it urges the Court to require a jury, should it find liability, to determine overtime compensation based on the fluctuating workweek method. However, Defendant does not point to any evidence showing that the nature of Plaintiff's salary is undisputed.

Plaintiff, on the other hand, argues that there is a question of fact as to whether Plaintiff's salary was intended for all hours actually worked or just a set number of hours each week. As support, Plaintiff points to deposition testimony in which Defendant says Plaintiff generally worked from 9 am to 6 pm six days a week with an hour for lunch; or 48 hours per week. Dkt. No. [49-2] ¶ 12. Plaintiff, pointing to his own deposition testimony, claims that he believed his salary covered just the 48 hours per week.

As such, the Court finds there is a question of fact as to what Plaintiff's weekly salary was intended to cover.[17] Therefore, should a jury find that Plaintiff is not exempt from overtime compensation, the Court will not require it to

---

[17] As support for its argument, Defendant cited several cases in which courts applied the fluctuating workweek method when the weekly salary was intended to compensate for all hours worked. See Ransom v. M. Patel Enters., Inc., 734 F.3d 377, 386-87 (5th Cir. 2013) (finding that where employees are paid a fixed weekly salary and are required to work whatever hours needed, half-time method should be used); Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 684 (7th Cir. 2010) (where weekly pay was fixed and weekly hours were indeterminate but routinely exceeded 40 hours, half-time overtime method should be used); Torres v. Bacardi Global Brands Promotions, Inc., 482 F. Supp. 2d 1379, 1382 (S.D. Fla. 2007) (where employee was paid a fixed salary regardless of hours worked in a week, half-time method was appropriate). However, in this case, there is a question of fact as to whether Plaintiff's salary was intended to compensate in the same way. As such, Defendant's cited cases are distinguishable.

calculate damages using the fluctuating workweek method. Instead, the jury must determine what the salary was intended to compensate and calculate overtime compensation accordingly.

**IV.    CONCLUSION**

In accordance with the foregoing, the Court **DENIES** Defendant's Motion for Summary Judgment [149]. The parties are **DIRECTED** to submit a pretrial order within **30 days** of the date of this Order.

**IT IS SO ORDERED** this 29th day of June, 2016

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE