IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUNG CHAN LEE,

     Plaintiff,

   v.

MEGAMART, INC.,

     Defendant.

CIVIL ACTION NO.

1:15-cv-00143-LMM

## JOINT MOTION FOR SETTLEMENT APPROVAL

Plaintiff Jung Chan Lee ("Plaintiff") and Defendant MegaMart, Inc. ("Defendant") jointly request approval of their Settlement Agreement and General Release. As grounds for this motion, the Parties show as follows:

1.    Plaintiff filed his Complaint [Doc. 1] on January 15, 2015, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*

2.    Defendant denied all material allegations and asserted defenses to all of Plaintiff's claims.

3.    Discovery was conducted, during which the Parties, *inter alia*, conducted depositions and exchanged documents, including payroll records, enabling each Party to understand and assess the detail and substance of their respective claims and defenses.



4.      On June 29, 2016, this Court issued an Order [Doc. 62] denying Defendant's Motion for Summary Judgment, which further clarified the Parties' understanding of their respective positions and enabled them to assess the risks and possibilities of continued litigation.

5.      Based upon the understandings and assessments of each Party, the Parties negotiated and entered, acting at arms' length, in good faith, and with the advice of counsel, into a Settlement Agreement and General Release, attached hereto as Exhibit 1.

6.      If approved, the Settlement Agreement and General Release will provide the Plaintiff with monetary consideration substantially equivalent to what he might have been awarded at trial if prevailed on the merits, while considering the risk of Defendant prevailing.  The Parties agree that there are significant questions of law and fact in dispute in this case which reduce Plaintiff's probability of success on the merits, including disputes over the number of overtime hours Plaintiff worked, whether Plaintiff was not properly compensated for any such hours, whether Plaintiff was properly classified as exempt from the FLSA's overtime requirements, whether any overtime damages should be calculated using the fluctuating workweek method, and the availability of liquidated damages, and that these questions create a *bona fide* dispute. Through significant investigation,

discovery and negotiations, the Parties have reached an informed and reasonable resolution of this matter. The Parties agree that if they continue to litigate the instant claims, they would be forced to engage in further costly litigation. The Parties further agree that this settlement is a reasonable means for both Parties to minimize future risks and litigation costs. Therefore, with advice of counsel, the Parties have elected to enter into the settlement agreement before the Court for approval, and they are satisfied with the terms and conditions contained therein.

7.    Plaintiff contends that he worked approximately 671.6 uncompensated overtime hours. Using the fluctuating workweek method of calculating damages – which Defendant contends is the proper method for calculating damages in this case – the maximum unpaid overtime compensation owed to Plaintiff would be $6,124.99.

8.    The parties' proposed settlement will provide Plaintiff with $9,950.00. Thus, Plaintiff is receiving all of his alleged unpaid overtime compensation and some liquidated damages, using the rate provided above. Given the vigorously disputed legal and factual issues in this matter, the parties consider the settlement a reasonable resolution. Pursuant to the proposed settlement, Plaintiff's counsel will receive $61,342.31 in attorney's fees, which Plaintiff represents is a significant reduction from counsel's fees incurred in this case on a lodestar basis. As part of

the settlement, Plaintiff's counsel will also reimbursed $3,657.69 in litigation costs.

9.      Pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982), the Parties submit that judicial approval is required to give effect to Plaintiff's release of her FLSA claims, which is material to the enforceability of the Settlement Agreement and General Release.

10.     The Parties respectfully request that the Court retain jurisdiction of this action to enforce the terms of the Parties' settlement. At such time as Defendants make all of the payments set forth in Sec. 1 of the Settlement Agreement, the Parties shall file a stipulation of dismissal with the Court.

Accordingly, the Parties respectfully request that the Court approve their Settlement Agreement and General Release. For the Court's convenience, a proposed Order is attached hereto as Exhibit 2.

**[SIGNATURE ON NEXT PAGE]**

Respectfully submitted: September 9, 2016

s/V. Severin Roberts
V. Severin Roberts
Georgia Bar No. 940504

**BARRETT & FARAHANY**
1100 Peachtree Street NE
Suite 500
Atlanta, Georgia  30309
Telephone: (404) 214-0120
Facsimile:  (404) 214-0125
Severin@JusticeAtWork.com

Counsel for Plaintiff

s/Michelle W. Johnson
Michelle W. Johnson
Georgia Bar No. 759611

**NELSON    MULLINS    RILEY
SCARBOROUGH LLP**
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6303
Michelle.johnson@nelsonmullins.com

Counsel for Defendants

**Exhibit 1 – Settlement Agreement**

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is hereby entered into by and between Jung Chan ("Lee" or "Plaintiff") on the one hand, and MegaMart, Inc. (the "Company"), on the other hand, as of the Effective Date (defined below). The Plaintiff and the Company are referred to herein individually as a "Party," and collectively, as the "Parties." As used herein, the phrases "this Agreement," "hereto," "hereunder," and phrases of like import shall mean this Agreement. All capitalized terms shall have the meanings ascribed to them in the Agreement.

WHEREAS, Lee was employed with the Company from January 16, 2013, through July 23, 2014; and

WHEREAS, on January 15, 2015, Plaintiff filed a Complaint for Damages against the Company in the United States District Court for the Northern District of Georgia (the "Court") captioned as *Jung Chan Lee v. MegaMart, Inc.*, Case No. 1:15-cv-00143-LMM, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA") (the "Litigation"); and

WHEREAS, MegaMart denies Plaintiff's claims and allegations in the Litigation and denies liability to Plaintiff; and

WHEREAS, the Parties desire to finally and forever resolve all disputed matters between them existing as of the date of this Agreement, whether or not raised in the Litigation; and

WHEREAS, the Parties have entered into this Agreement to bring about such resolution;

NOW, THEREFORE, the Parties, with the intent of totally ending and forever foreclosing all matters or potential matters in dispute between the Parties up to the time of this Agreement, thereby assuring peace between the Parties based on such matters, in return for the mutual promises and consideration contained herein, the sufficiency of which is expressly acknowledged, agree as follows:

1.    **Settlement Payment to Lee.**  Provided that Lee executes, and does not revoke, this Agreement and the Court has approved the settlement, the Company shall pay Lee the amount of Seventy-Four Thousand Nine Hundred Fifty and No/100ths Dollars ($74,950.00), less applicable taxes, withholdings or deductions (the "Lee Gross Settlement Payment") in three equal payments to be made on September 10, 2016, October 10, 2016, and November 10, 2016. The Lee Gross Settlement Payment shall be allocated as follows:

(i)    The gross sum of $4,975.00 made payable to "Jung Chan Lee," which shall constitute the entire amount payable to Lee for his Released Claims, as that term is defined in Section 4, including payment for any alleged unpaid wages (including overtime compensation), back pay, interest, and any similar forms of relief he may have sought in the Litigation. The Company shall deduct applicable taxes, withholdings and deductions from this portion of the Lee Gross Settlement Payment in accordance with Lee's latest issued W-4, and shall include this amount on a Form W-2 issued by the Company to Lee at year-end.

(ii)     The sum of $4,975.00 by separate payment(s) made payable to "Jung Chan Lee," which shall constitute the entire amount payable to him for alleged liquidated damages he may have sought in the Litigation.  The Company shall not deduct any taxes, withholdings or deductions from this portion of the Lee Gross Settlement Payment, and shall record this amount on a Form 1099 issued by the Company to Lee at year-end.

(iii)    The sum of $65,000.00 as payment for Lee's attorney's fees and litigation expenses, made payable to Lee's counsel "Barrett & Farahany." The Company shall not deduct any taxes, withholdings or deductions from this portion of the Lee Gross Settlement Payment, and shall record this amount on a Form 1099 issued by the Company to Lee's counsel at year-end.

By way of further clarification, each payment shall be allocated as follows:

### September 10, 2016 Payment

(i)      $1,658.34 made payable to "Jung Chan Lee," less applicable taxes, withholdings and deductions.

(ii)     $1,658.34 made payable to "Jung Chan Lee," with no deductions.

(iii)    $21,666.66 made payable to Lee's counsel "Barrett & Farahany," with no deductions.

### October 10, 2016 Payment

(i)      $1,658.33 made payable to "Jung Chan Lee," less applicable taxes, withholdings and deductions.

(ii)     $1,658.33 made payable to "Jung Chan Lee," with no deductions.

(iii)    $21,666.67 made payable to Lee's counsel "Barrett & Farahany," with no deductions.

### November 10, 2016 Payment

(i)      $1,658.33 made payable to "Jung Chan Lee," less applicable taxes, withholdings and deductions.

(ii)     $1,658.33 made payable to "Jung Chan Lee," with no deductions.

(iii)    $21,666.67 made payable to Lee's counsel "Barrett & Farahany," with no deductions.

Until the final (November 10, 2016) payment is made, the Court shall retain jurisdiction of the Litigation for the purpose of enforcing the terms of this Agreement.

2

2.    **Acknowledgments Regarding Settlement Payments.**   Plaintiff assumes full responsibility to all federal, state and local taxing authorities and agrees to indemnify and hold the Company or any entities or individuals affiliated with it harmless from any and all tax consequences, including interest, penalties, fines or attorney's fees, arising out of the payment to him of the Gross Settlement Payment.  The Gross Settlement Payment is the total and sole consideration to be paid by the Company to Plaintiff and his counsel for this Agreement and includes all costs and attorney's fees.  It is expressly understood that the Gross Settlement Payment is paid to and accepted by Plaintiff in full settlement of all alleged damages arising out of the subject matter of this Agreement, whether known or unknown and whether or not ascertainable at the time of the execution of this Agreement.  Plaintiff also understands that his entitlement to and retention of the benefits mentioned herein are expressly conditioned upon Plaintiff's fulfillment of the promises herein.

3.    **General Release.**  In further consideration of the foregoing, Plaintiff does hereby knowingly and voluntarily release and forever discharge, both jointly and severally, the Company, its corporate subsidiaries, parents and affiliates, and their current and former officers, directors, employees, shareholders, attorneys, servants, agents, representatives and insurers, together with their predecessors, successors and assigns (hereinafter collectively referred to as "Releasees"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "Released Claims"), whether known or unknown, which Plaintiff ever had, now has, or may or might in the future have against the Releasees, arising out of events or occurrences arising at or before the moment Plaintiff signs this Agreement, including, but not limited to:  (i) those claims which were or could have been asserted in the Litigation; (ii) those claims arising under the FLSA; (iii) those claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"); (iv) those claims arising under Title VII of the Civil Rights Act of 1964; (v) those claims arising under 42 U.S.C. § 1981; (vi) those claims arising under the Civil Rights Act of 1991; (vii) those claims arising under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008; (viii) those claims arising under the Rehabilitation Act of 1973; (ix) those claims arising under the Equal Pay Act of 1963; (x) those claims arising under the Genetic Information Nondiscrimination Act of 2008; (xi) those claims arising under the Family and Medical Leave Act of 1993 ("FMLA"); (xii) those claims arising under the National Labor Relations Act, as amended by the Labor-Management Relations Act ("NLRA"); (xiii) those claims arising under the Employee Retirement Income Security Act of 1974; (xiv) those claims arising under the Worker Adjustment and Retraining Notification Act of 1988; (xv) those claims arising under any other federal or state fair employment practices or wage and hour statute, or any ordinance promulgated by any county, municipality, or other state or federal subdivision; (xvi) those claims for retaliatory or wrongful discharge of any kind; (xvii) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xviii) those claims for breach of contract (express or implied, in fact or in law, oral or written), or any duty or implied covenant of good faith and fair dealing; (xix) those claims for breach of fiduciary duty, fraud, misrepresentation, breach of right of privacy, libel, slander, defamation or tortious conduct of any kind; (xx) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xxi) those claims arising from or in reliance upon any statute, regulation, rule or ordinance (local, state or federal); (xxii) any and all other claims arising under law or in equity; and (xxiii) any and all other claims which Plaintiff

3

ever had, now has, or may or might in the future have arising by reason of or in any way connected with any relationship which may have existed prior to or on the date hereof between Plaintiff and the Company, the termination of that relationship, or the decision to terminate that relationship; provided, however, that this Agreement does not waive rights or claims that may arise after the date the Agreement is executed.

   a. Without limiting the generality of the foregoing, Plaintiff hereby certifies that he has received all leave benefits due him, and acknowledges that he is not aware of any facts that would state claims by him against the Releasees arising under the FMLA or NLRA.

   b. Plaintiff warrants that he has not filed or assigned or transferred to any other person any claim released in this Section. In the event of such filing, assignment, or transfer, Plaintiff agrees to indemnify and hold harmless the Releasees from and against any liability, loss, cost (including attorney's fees), expense, settlement, or judgment arising out of such filing, assignment, or transfer.

   c. Plaintiff further acknowledges and covenants that, in consideration for the agreements and commitments set forth herein, he has knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to him, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law, claims for backpay or front pay, compensatory damages, punitive damages, liquidated damages, expense reimbursement, reinstatement and recovery of attorney's fees.

  4. **Covenants Not to Sue.** Plaintiff further acknowledges and covenants not to sue the Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by him herein. Plaintiff also acknowledges and covenants that he understands that after signing this Agreement, he cannot proceed against any Releasee with respect to or on account of any of the matters referred to in it; provided, however, that this covenant does not affect Plaintiff's right to test the knowing and voluntary nature of the Agreement in court under the OWBPA; provided further, that this Agreement does not prohibit Plaintiff from filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or any other federal, local or state agency, although Plaintiff agrees and acknowledges that he has waived, and shall not collect, any monetary benefits if the EEOC or other federal, state or local agency pursues a suit on his behalf against the Releasees. In the event that Plaintiff prevails in any claim brought against any Releasee arising under the ADEA, the Parties agree that such Releasee shall be entitled to offset all amounts paid under this Agreement against any amount recovered by Plaintiff.

  A "covenant" not to sue is a legal term that means a party promises not to file a lawsuit against another in court. It is different from the General Release of claims contained in Section 3 of this Agreement. In exchange for the consideration described in Section 1 and other good and

valuable consideration, the receipt and sufficiency of which is acknowledged, Plaintiff further agrees never to sue any of the Releasees for any of the Released Claims. Plaintiff also agrees that he will not join or consent to opt into any certified or conditionally-certified class or collective action, or any other multi-party litigation, against any Releasee involving any of the Released Claims. Likewise, Plaintiff agrees that he will opt-out or otherwise withdraw from any such litigation to which he becomes a member or participant.

If Plaintiff violates this covenant by suing any of the Releasees for any Released Claims, Plaintiff shall be liable to such Releasees as are party to such lawsuit for their reasonable attorney's fees and other litigation costs incurred in defending against such lawsuit. Alternatively, if Plaintiff sues any of the Releasees for any Released Claims, Plaintiff may be required, at the option of such Releasee, to return all but One Hundred Dollars and No Cents ($100.00) of the consideration paid to Plaintiff pursuant to this Agreement, which amount Plaintiff acknowledges constitutes good and valuable consideration for the promises and covenants in this Agreement.

Nothing in this Section 4 shall apply to prohibit Plaintiff from suing to enforce the terms of this Agreement. Nothing in this Section 4 precludes or restricts the Company from seeking any and all damages, injunctive relief, or other remedies against Plaintiff for violation of any section of this Agreement. Plaintiff acknowledges and agrees that the covenant not to sue in this Section 4 is an essential and material term of this Agreement without which the Parties could not have reached a settlement. Plaintiff affirms that he understands and acknowledges the significance and consequence of this Section 4.

5.    **OWBPA Acknowledgments.**

    a.    Plaintiff acknowledges and agrees that the consideration being provided him in exchange for this Agreement is in addition to anything of value to which he already is entitled.

    b.    Plaintiff is hereby advised in writing to consult with an attorney prior to executing the Agreement.

    c.    Plaintiff acknowledges and agrees that he had a period of twenty-one (21) days within which to consider the Agreement.

    d.    Plaintiff acknowledges that for a period of seven (7) days following his execution of this Agreement, he may revoke the Agreement by mailing written notice of his revocation to the Company c/o Michelle W. Johnson, Nelson Mullins Riley & Scarborough LLP, Atlantic Station / 201 17th Street, NW / Suite 1700, Atlanta, Georgia 30363. The Agreement shall not become effective or enforceable until the first day after the latest revocation period has expired and the court has approved the settlement (the "Effective Date").

    e.    Plaintiff acknowledges and agrees that he has read and understands all the terms and conditions of the Agreement; that he was not coerced, pressured or forced in any way by the Company or anyone else to accept the terms of this Agreement; and that he is entering into this Agreement knowingly

and voluntarily, and without promise or benefit other than as set forth herein.

6. **Settlement Approval.** Within five (5) days after the Effective Date, the Parties shall cause to be completed, executed and filed in the Litigation a Joint Motion for Settlement Approval, consistent with this Agreement and in the form attached hereto as Exhibit A. Until the final (November 10, 2016) payment is made, the Court shall retain jurisdiction of the Litigation for the purpose of enforcing the terms of this Agreement.

7. **Waiver of Reemployment.** Plaintiff covenants that he will never knowingly apply for or accept employment with the Company, or its corporate subsidiaries, parents, or affiliates. Plaintiff acknowledges and agrees that in the event that he applies for employment with any of these entities, such application shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for any refusal to hire him. Plaintiff further acknowledges and agrees that in the event that he is mistakenly rehired by any of these entities, such acceptance of employment shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for his termination, without cause, without notice, and without recourse available to him against these entities. Plaintiff further agrees that he will not assert, file or prosecute any charge or claim against the Company or its corporate subsidiaries, parents, or affiliates based on this Section.

8. **Denial of Wrongdoing.** It is further understood and agreed that the payment and benefits conferred herein are not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

9. **Non-Admission.** This Agreement is entered into solely in order to compromise and settle disputed claims, without any acquiescence, acknowledgement, or agreement by any Party as to the merit of any actions, causes of action, suits, debts, dues, sums of money, accounts, damages, expenses, attorney's fees, costs, punitive damages, penalties, judgments, claims or demands released herein. Neither this Agreement nor any part thereof shall be, or be used as, evidence or an admission of liability by anyone, at any time, for any purpose. Nothing in this Section or this Agreement shall be construed to prohibit a Party from using this Agreement as evidence of the terms of the Parties' agreement in a suit to enforce this Agreement.

10. **Basis for Settlement.** Each Party acknowledges and agrees that the terms of this Agreement are, and have been agreed to, for their mutual convenience, in part to avoid the expense, distraction, risk and uncertainty of further litigation, and after considering the risks of litigation and the circumstances of their respective businesses. Each Party also acknowledges and agrees that it has relied entirely on its own judgment, belief and knowledge (including its judgment, belief and knowledge with respect to the foregoing, the extent and duration of the claimed damages in the Litigation, and the value of settling the Litigation at this time) and the advice and recommendations of his or its own independently selected counsel, and, accordingly, except as set forth herein, neither it nor anyone acting on its behalf shall (or shall have the right to) deny or challenge the validity of this Agreement or any of the obligations of the Parties hereunder.

6

11.   **Neutral Reference.**   The Company agrees to provide a neutral reference (name, dates of employment and positions held) if any entities contact the Company for an employment reference with respect to Lee.

12.   **Construction.**   This Agreement has been negotiated by the Parties and shall be interpreted fairly in accordance with its terms and without any construction in favor of or against any of the Parties.   The interpretation and construction of this Agreement shall be subject to the following provisions:   (a) words importing the singular meaning include where the context so admits the plural meaning and vice versa; (b) the terms "and" and "or" as used herein shall mean both the conjunctive and the disjunctive, so that one word or the other may be taken accordingly as the one or the other (i.e., "and/or"); (c) the word "any" shall mean "all" or "one out of several"; (d) references to any person shall include natural persons and partnerships, firms and other incorporated bodies and all other legal persons of whatever kind and however constituted; (e) the words "include," "includes" and "including" are to be construed as if they were immediately followed by the words "without limitation"; and (f) captions and headings used herein are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement.

13.   **Successors and Assigns.**   This Agreement shall be binding upon and inure to the benefit of the Parties and their heirs, executors, administrators, conservators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through them based or founded upon any of the claims released herein.

14.   **Waiver.**   Failure by any Party to insist upon strict performance of any provision herein by any other Party shall not be deemed a waiver by such Party of its rights or remedies or a waiver by it of any subsequent default by such other Party, and no waiver shall be effective unless it is in writing and duly executed by the Party entitled to enforce the provision being waived.

15.   **Severability.**   In the event that any term, covenant, condition, agreement, section or provision hereof shall be deemed invalid or unenforceable, this Agreement shall not terminate or be deemed void or voidable, but shall continue in full force and effect and there shall be substituted for such stricken provision a like but legal and enforceable provision which most nearly accomplishes the intention of the Parties hereto.

16.   **Entire Agreement.**   This Agreement constitutes the entire agreement between the Parties regarding the subject matter set forth herein, and all prior statements, negotiations, representations or warranties are expressly merged herein.   Except as set forth in this Agreement, no Party has relied upon the representations of the other Party to induce them to enter into this Agreement.   It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of the Parties.

17.   **Choice of Law and Forum Selection.**   This Agreement will be interpreted under and is governed by the laws of the State of Georgia without regard to conflicts of laws principles. The Parties (a) hereby irrevocably submit themselves to and consent to the exclusive jurisdiction of the Court (or, if the Court lacks jurisdiction, the state courts for Gwinnett County, Georgia) for the purposes of any action, claim, suit or proceeding arising from or relating to this

Agreement, and (b) hereby waive, and agree not to assert, by way of motion, as a defense or otherwise, in any such action, claim, suit or proceeding, any argument that he or it is not personally subject to the jurisdiction of such court(s), that the action, claim, suit or proceeding is brought in an inconvenient forum, or that the venue of the action, claim, suit or proceeding is improper.

18.    **Counterparts.** This Agreement may be executed in separate counterparts, each of which shall constitute an original.  Facsimile or electronic signatures shall be treated as originals.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

The undersigned acknowledges that he has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this __6__ day of _____9_____, 2016.

JUNG CHAN LEE

_____
Signature

___9 / 6 / 2016_____
Date

The undersigned acknowledges that its authorized signatory has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this ___9___ day of _____9_____, 2016.

MEGAMART, INC.

_____
Signature

_____Gi Tae shin_____
Print Name

_____CEO_____
Title

_____9/1/2016_____
Date

**Exhibit 2 – Proposed Order**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUNG CHAN LEE,

        Plaintiff,

    v.

MEGAMART, INC.,

        Defendant.

CIVIL ACTION NO.

1:15-cv-00143-LMM

## ORDER

This matter is before the Court on a Joint Motion for Settlement Approval. Upon review of the proposed Settlement Agreement and General Release ("Settlement"), the Court finds that the settlement is a fair and reasonable resolution of the disputes. The Parties' Settlement is **APPROVED.** Accordingly, their Joint Motion for Settlement Approval is **GRANTED**. This Court shall retain jurisdiction of this matter for the sole purpose of enforcing the Settlement.

IT IS SO ORDERED, this the _____ day of _____ 2016.

_____
Honorable Leigh M. May
Judge, United States District Court

1